# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**DIANNE MURRAY on behalf of J.M.**                                        **PLAINTIFF**

V.                                       **CIVIL ACTION NO. 4:11CV74 HTW-LRA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Dianne Murray appeals the final decision denying the application for Supplemental Security Income ("SSI") that she filed on behalf of her minor son, J.M. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

## Facts and Procedural Background

Plaintiff filed an application for SSI on behalf of her son on June 3, 2008. The application was denied initially and on reconsideration. She appealed the denial, and on July 28, 2010, Administrative Law Judge Regina L. Warren ("ALJ") rendered an unfavorable decision, finding that she had not established that J.M. was disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review on March 2, 2011, and she now appeals that decision.

J.M. was born on August 28, 2000, and was eight years old when his application for benefits was filed. He is the one of seven children, ages one through eleven, and he

allegedly suffers from oppositional defiant disorder, asthma, attention deficit hyperactive disorder, allergic rhinitis, and mental retardation.

After reviewing all the evidence, the ALJ concluded that J.M. was not disabled under the Social Security Act and was not entitled to childhood disability benefits pursuant to 20 C.F.R. § 416.924(a). At step one of the three-step sequential evaluation process, the ALJ found that J.M. has not engaged in substantial gainful activity. At steps two and three, the ALJ found that while J.M.'s attention deficit hyperactivity disorder was severe, the medical evidence did not support listing-level severity. She also found that his allergic rhinitis, history of asthma, and oppositional defiant disorder were not severe, and that there was no evidence that he had medically determinable impairments of mental retardation or Asperger's syndrome. With regard to the six functional domains, the ALJ concluded that Plaintiff had less than marked limitations in acquiring and using information, in attending and completing tasks, and in interacting and relating with others, and had no limitations in moving about and manipulating objects, in caring for himself, and in health and physical well-being.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). When evaluating a child's eligibility for disability

2

benefits, an ALJ engages in a three-step sequential process, which considers:

    (1)    whether the child is doing substantial gainful activity;

    (2)    if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

    (3)    if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d). If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530-32 (1990)). To be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain ... ." 20 C.F.R. § 416.926a(a). A marked limitation interferes seriously with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

**Standard of Review**

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d

3

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Any findings by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

## Discussion

Murray raises two primary issues on appeal: (1) the ALJ erred in failing to find that J.M.'s asthma and oppositional defiant disorder were severe impairments at step two, and, (2) the ALJ erred in failing to find that J.M.'s asthma and mental retardation impairments satisfy Listings 112.05D and 103.03C2. The undersigned rejects these arguments for the reasons that follow.

**1.    Substantial evidence supports the ALJ's severity determination.**

For claimants under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. 924 (c). *See Goffney ex rel. B.L. v. Astrue,* No. 4:09cv161, 2011 WL 1297184 (S.D. Miss. March 31, 2011) (severity standard set forth in 20 C.F.R. § 416.924 is proper legal standard for claimants under age 18). Plaintiff does not dispute that the ALJ applied the

4

correct severity standard here, but asserts that the ALJ committed reversible error in failing to find her son's asthma and oppositional defiant disorder were severe.

As to asthma, Plaintiff's argument is that because J.M.'s asthma condition "arguably" meets the listing requirements for presumptive disability, the ALJ erred in failing to find it was a severe impairment at step two. She does not otherwise specifically challenge any finding by the ALJ regarding the severity of J.M.'s asthma condition. A finding of non-severity is "fundamentally inconsistent with facts that show the listing is satisfied." *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146,151 (6th Cir. 1986). But as discussed herein, the facts in this case do not support Plaintiff's argument that J.M.'s asthma condition meets or equals the listing criteria.

With regard to oppositional defiant disorder, Plaintiff argues the following evidence establishes the severity of her son's condition: (1) he was diagnosed with oppositional defiant disorder by consulting examiner, Dr. Jan Boggs, in September 2008; (2) he was subsequently treated for the same disorder at Weems Community Mental Health Center from February 2009 through March 2010; and, (3) he was hospitalized at Alliance Health Center for the same disorder in July 2009.

As noted by the ALJ, while claimant had intermittent problems with anger and aggression, he was not taken for treatment until February 2009, despite his parents' reports that his disruptive and defiant behavior had gone on for more than two years, and despite having been diagnosed with oppositional defiant disorder with features of attention deficit hyperactivity disorder, in 2008 by Dr. Boggs. In his report, Dr. Boggs

5

described J.M. as a "concrete, rather egocentric youngster that does not seem to have social recognition or concern beyond his own immediate needs." He had been designated as "emotionally disabled" by the school system and given special education services in the first grade. Dr. Boggs did not know the nature of the services, but he opined that they were perhaps of the "inclusion-type where he receives extra help in a regular class." He also described J.M.'s mood as dysphoric during the examination, with a "slight degree of resistance and oppositionalness." The report noted that he was frowning, nodding, and would not establish eye contact; he was also not very verbal and had a relatively short attention span. Further, there were also "unusually large variations" in his intelligence testing, as his Full Scale I.Q. score of 76 was much better than his verbal score of 64. Based on his observations and findings, Dr. Boggs concluded that Plaintiff "would benefit from mental health counseling services" and his parents "could use some guidance with a child who presents some unique problems." [1]

Records from Weems reflect that J.M. was not taken for treatment until February 2009, nearly six months later. In the initial evaluation, his parents reported that he "did not want to follow instructions, wanted his way at all times, was physically aggressive when confronted and extremely sensitive when criticized."[2] But within a few months of medication and treatment, weekly reports indicate that his ability to manage anger, impulse control, social skills, functional living skills, and problem-solving all began to

---

[1] ECF No. 8-1, pp. 288-291.

[2] ECF No. 8-1, pp. 19, 272-275.

improve. By May 2009, his second grade teacher reported that he had no problems in any functional domains, including interacting and relating with others.[3]

Despite this improvement, J.M. was briefly admitted into Alliance Health Center's Child Psychiatric Unit for oppositional defiant disorder in July 2009. Concerned that these records consisted "solely of a Discharge Summary and Plan of Treatment totaling eight pages for an admission of approximately eleven days," the ALJ assigned them less than controlling weight. She explained that:

> [C]laimant was showing significant progress through July 2009 as evidenced by the records from Weems, prior to his July admission, with no evidence of the need for such intervention, or from whom such recommendation arose, and it is unclear as to the reason for such turn of events.[4]

Still, Plaintiff asserts that a condition requiring hospitalization cannot be dismissed as "non-severe." The Court notes, however, that the discharge summary from Alliance reflects that J.M. reached maximum hospital benefit within two weeks, and was tolerating medications without side effects. His prognosis was fair. He was "calm and composed," with no auditory or visual hallucinations, suicidal or homicidal thoughts, and there was no evidence of psychosis or mania. His parents were also given instructions at discharge to continue with his current medication and to "follow up at Weems Mental Health Center on August 17, 2009." [5]

---

[3]ECF No. 8-1, pp. 212-216.

[4]ECF No. 8-1, p. 23.

[5]ECF No. 8-1, pp. 330-331.

7

Records confirm that with resumed treatment at Weems, J.M.'s condition continued to improve. As noted by the ALJ, with the exception of failing to comply with treatment on two occasions in September 2009, his impairments were "well-controlled with medication and behavioral strategies." Throughout the remainder of 2009, therapists at Weems reported evidence of his improvement: he was now in the third grade, he was on honor roll, and his teachers were reporting no problems in the classroom. His parents, however, were still reporting that "when at home, claimant was uncontrolled with angry outbursts and temper tantrums when not getting his way." The ALJ found this report and similar testimony from the claimant's mother inconsistent. She explained that:

> At the hearing, claimant's mother provided somewhat contradictory testimony. For example, she testified that claimant's behavior was bad in school and in public places such as church. However, when questioned about statements given to Weems that claimant's behavior was good in school and at the store she acknowledged that if she said that then claimant's behavior must have been satisfactory. She also testified that claimant had not improved since attending Weems, and yet records from Weems document claimant's progress.[6]

The ALJ also noted that in February 2010, a Weems's therapist recommended that claimant would continue to benefit from therapy to address sibling conflict. By his last visit in March 2010, J.M. reported that he was trying and things were getting better. He also testified at the administrative hearing that while he still gets angry at his older siblings, he was in the math club and got along well with the other students.[7]

Based on the record evidence, the ALJ reasonably concluded that J.M.'s behavioral problems "appear to be more concentrated in the home environment and not

---

[6]ECF No. 8-1, p. 21.

[7]ECF No. 8-1, pp. 19, 22, 73-88.

elsewhere. With appropriate supportive intervention, claimant's impairments can reasonably be expected to improve."[8] Substantial evidence supports the ALJ's finding. Even if the ALJ erred in failing to find this impairment was severe, Plaintiff is not entitled to automatic reversal or remand. As set forth below, the ALJ proceeded to step three of the sequential evaluation process and considered the evidence relevant to J.M.'s oppositional defiant disorder in her assessment of the six functional domains. *See, e.g., Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988), and *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).

**2. Substantial evidence supports the ALJ's findings that Plaintiff's impairments did not meet or equal Listings 112.05D and 103.03C2.**

Plaintiff contends the ALJ erred in failing to find that J.M.'s asthma and alleged mental retardation satisfy the Commissioner's standards for presumptive disability. If a disability claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled. A claimant has the burden of proving that his condition meets or equals a listing, and he must manifest all of the specified criteria of a particular listing to meet this burden. *Zebley,* 493 U.S. at 530.

In this case, it is undisputed that J.M. was diagnosed with asthma, but a diagnosis alone is insufficient to establish presumptive disability or severity. For asthma to be presumptively disabling, Listing § 103.03C2 requires the medical evidence to show in relevant part:

> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of

---

[8]ECF No. 8-1, p. 22.

9

> sympathomimetic bronchodilators with one of the following:
> . . .
>
> 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

As evidence that her son satisfies this listing, Plaintiff cites J.M.'s prescription history establishing that he was on corticosteroids: Veramyst, Advair, and Fluticasone for the requisite amount of time to meet the listing's requirements. Listing-level asthma is not merely the existence of asthma which requires medication to prevent attacks. While the record reflects these corticosteroids were taken for preventive measures, the evidence does not establish that J.M. had persistent low-grade wheezing between acute attacks. Of the 84 pages of medical records, only approximately 20 pages reflect treatment for his physical ailments. Of those pages, the majority reflect treatment for pet and food allergies, nasal congestion and drainage– all of which were discussed by the ALJ. Also, only "occasional wheezing" was reported by claimant's mother during an evaluation for nasal problems at the University of Mississippi Medical Center in February 2009.[9] No information is provided as to how many days the wheezing persisted – only that he has a history of wheezing and sinusitis. The treatment note also indicates that J.M. had only recently started using the steroid Veramyst, and that it "significantly improved his symptoms." In the last physical examination of record in December 2009, the medical provider does note that J.M. has a history of fairly moderate persistent asthma for which

---

[9] ECF No. 8-1, pp. 21, 277.

he takes medication.[10]  But even if the Court were to liberally construe this evidence in the light most favorable to the claimant, it is not enough to establish presumptive disability.  The claimant's mother fails to show "persistent low-grade wheezing between attacks or the absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators."  At the administrative hearing, she testified that he only uses ProAir, his prescribed bronchodilator, when he plays "aggressive sports" outside.  She did not otherwise "testify to any asthma crises," only that J.M. takes steroids as prescribed and she administers them as directed. [11]

Lastly, Plaintiff claims the ALJ erred in failing to find that he has a learning disorder that satisfies the listing requirements for mental retardation.  Under Listing 112.05D, mental retardation is characterized by "significantly subaverage general intellectual functioning ***with*** deficits in adaptive functioning." Subpart D requires intelligence testing showing "a valid verbal, performance, or full scale IQ of 60 though 70 ***and*** a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D(emphasis added).  As evidence that her son satisfies this listing, Plaintiff points first to Dr. Boggs's finding that J.M.'s verbal I.Q. score was 64 during the consultative examination, and secondly, to the ALJ's finding that J.M.'s attention deficit hyperactivity disorder is a severe

---

[10]ECF No.  8-9, pp.  61-62.  The record indicates that J.M. was evaluated for a possible heart murmur. An electrocardiogram and an echocardiogram were normal.  He was diagnosed with a classic Still's vibratory murmur which doctors determined needed no further follow-up.

[11]ECF No.  8-1, pp.  21, 22, 57, 277.

11

impairment. Thirdly, as evidence of deficits in adaptive functioning, she cites the special education services claimant received in the first grade, and a secondary diagnosis of borderline intellectual functioning by Alliance in August 2009.

No examining or treating physician of record has ever diagnosed J.M. with mental retardation. Further, while the claimant's verbal I.Q. score falls within the listing range, simply having a low I.Q. score is not enough. The listing for mental retardation requires that "significantly subaverage general intellectual functioning with deficits in adaptive functioning" must also be proved. *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). The evidence of record, including Plaintiff's own testimony, conclusively establishes that J.M. meets neither criteria. He has not needed special education services since the first grade, and the record reflects that these services were primarily implemented to address the weaknesses in his social and behavioral skills. As noted by the ALJ, once these issues were addressed, J.M. has "attended regular classes since 2nd grade, was on the honor roll in 3rd grade and was promoted to 4th grade." [12]

The evidence also fails to establish that J.M. has deficits in adaptive functioning. No deficits were reported by his second grade teacher in any functional domains. Also, both J.M. and his mother testified that he was able to care for himself and perform chores. Although he fights with his brothers, both acknowledged that his grades and behavior improved at school. He was in the math club and got along well with club members and some family members. He also plays video games and sports, and only needs ProAir

---

[12]ECF No. 8-1, p. 22.

12

when he plays aggressively. Based on this evidence, the ALJ concluded that J.M. had less than marked limitations in acquiring and using information, in attending and completing tasks, and in interacting and relating with others, and no marked limitations in moving about and manipulating objects, in caring for himself, and in health and physical well-being. Substantial evidence supports these findings.

## Conclusion

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion to Remand should be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

In accordance with Local Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* and 28 U.S.C. § 636, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation.

The parties are hereby notified that the failure to file written objections to the Report and Recommendation within the specified time shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R.

Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 28th day of January 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE